# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:11-cv-160-RJC

| | |
|---|---|
| HELMAR CHRISTOPHER OLSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| BOBBY TAYLOR, et al., ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on initial review as provided for by 28 U.S.C. § 1915A. The Court has reviewed the pro se Plaintiff's Complaint, filed under 42 U.S.C. § 1983, (Doc. No. 1), and Amended Complaint, (Doc. No. 6). Plaintiff filed his Amended Complaint to add a new defendant, Susan White, and additional allegations. The Court finds that Plaintiff's initial Complaint has not been served on any of the named defendants and therefore Plaintiff may amend his Complaint as a matter of course. See Fed. R. Civ. P. 15(a).

Pursuant to Section 1915A(a), the "court shall review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or employee of a governmental entity." Following this initial review, the "court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . fails to state a claim for relief." Id. § 1915A(b)(1). Plaintiff is an inmate in Mountain View Correctional Institution. Plaintiff's Complaint, as amended (hereinafter "Amended Complaint"), seeks relief under Section 1983 from correctional employees he alleges were acting under color of state law when they violated his Eighth Amendment right to be free from cruel and unusual punishment through their deliberate indifference. Plaintiff also contends that certain Defendants violated his rights by

failing to follow the grievance policy of the North Carolina Department of Corrections. These claims and allegations will be discussed in detail below.[1]

I.     STANDARD OF REVIEW

Section 1983 provides a remedy where a person acting under color of state law deprives someone of a right secured by federal law. Section 1983 applies to violations of federal constitutional rights, as well as certain limited federal statutory rights. See Maine v. Thibotout, 448 U.S. 1 (1980); see also Gonzaga University v. Doe, 536 U.S. 273, 283 (2002) (holding that a right must be "unambiguously conferred" by a statute to support a Section 1983 claim); Golden State Transit Corp. v. Los Angeles, 493 U.S. 103, 107-08, n.4 (1989) ("A claim based on a statutory violation is enforceable under § 1983 only when the statute creates 'rights, privileges, or immunities' in the particular plaintiff ."). A pro se complaint in a proceeding in forma pauperis must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.3d 387 (4th Cir. 1990). After conducting this initial review of Plaintiff's Amended Complaint, the Court concludes that Plaintiff's action must be dismissed for failure to state a claim upon which relief can be granted.

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "Ashcroft v.

---

[1] Based on the evidence presented by Plaintiff, it appears that his administrative remedies have been exhausted. (Doc. No. 4: Prisoner Administrative Remedy Statement). However, even assuming that there is a question regarding exhaustion the Court still holds dismissal for failure to state a claim is proper. 42 U.S.C. § 1997e ("In the event a claim . . . fails to state a claim upon which relief can be granted . . . the court may dismiss the underlying claim without first requiring exhaustion of administrative remedies.")

Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) ). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). It is not necessary that Plaintiff allege exhaustive, "detailed factual allegations," but [Rule 8] demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (citing Twombly, 550 U.S. at 555).

## II. DISCUSSION

### A. Plaintiff's Amended Complaint

In Plaintiff's Amended Complaint he alleges that defendant correctional officers Bobby Taylor and Marl Foster have on multiple occasions willfully exposed his status as both a former police officer and a convicted sex offender to his fellow inmates. This exposure, Plaintiff contends, has placed his safety at great risk. Plaintiff alleges that "sometime in 2009," Defendant Taylor entered his cell while conducting what appears to be a routine search and found a photograph of Plaintiff in his police officer's uniform. According to the Complaint, Taylor remarked, "Oh you use to be a cop." Plaintiff confirmed this and Taylor responded, "I bet you don't want that to get out do you?" Plaintiff explained that he tried to keep his status as a former police officer a secret, to which Taylor allegedly replied, "I just bet you do" and then he laughed. (Doc. No. 1 at 5).

Plaintiff alleges Defendant Taylor has made disparaging comments to him, referring to Plaintiff as a "dirty cop", "Bacon boy", and other derogatory names. This practice of name-calling has persisted, according to Plaintiff, for over a year preceding the filing of his Complaint, despite Plaintiff's repeated pleas for Taylor to stop. (Id. at 7 ¶ 3). On March 23, 2011, Plaintiff alleges Defendants Taylor and Foster were discussing his former career as a police officer and

his status as a child molester while in the presence of his fellow inmates. Plaintiff contends, that based on his experience as a police officer, his former occupation and his sex offense charges do not present him in a favorable light to the prison population and increases the risk to his "personal safety." (Id. at 7 ¶ 4). Plaintiff states that Foster repeated these offending statements in the presence of inmates the following day.

On March 30, 2011, Plaintiff filed a grievance against Taylor, and following an interview with Sergeant Rebecca Dale, Plaintiff was offered protective custody. Plaintiff refused, however, contending that protective custody would only protect him from other inmates, and "not from the prison staff." Plaintiff reports that Sgt. Dale "was sympathetic" to his concerns and stated that "Taylor would be dealt with." (Id. at 8 ¶ 7). As a follow-up to his initial grievance interview, Plaintiff met with Defendant Moody from internal affairs. Plaintiff confirmed the allegations in his grievance against Taylor, and Moody then offered him protective custody. Plaintiff again refused protective custody citing the same reasons. Plaintiff explained to Moody that Taylor had been making comments regarding his former occupation and criminal status for well over a year and that Taylor would not stop making these disclosures in the presence of other inmates even after Plaintiff requested that he stop. (Id. at 9 ¶ 8). Plaintiff identified two inmates who witnessed Taylor make the offending statements and the inmates prepared statements memorializing their observations. (Id.). Defendant Moody summoned these inmates for an interview, and while Plaintiff does not know the substance of the interview, Plaintiff spoke to the inmates and they stated that they did not "want to get involved for fear of retaliation from the staff." (Id. at 10 ¶ 9).

In early April 2011, Plaintiff alleges that a fellow inmate named Flowers was returning from his job as a chapel clerk when Defendant Taylor stopped Flowers and inquired "about how

4

much time he had left and about the nature of his crime." Plaintiff notes that Taylor would have access to the requested information because of his job as a correctional officer or Taylor could obtain in the information through the "D.O.C. web-site which is a public record." Plaintiff is of the "opinion [this inquiry of Flowers] was an intimidation tactic and retaliation for Flowers giving a statement on" Plaintiff's behalf. (Id. ¶ 10).

Plaintiff recounts an additional incident where Taylor appeared in the shower while Flowers was present and Taylor "made a throat cutting gesture with his hand toward inmate Flowers." Plaintiff surmises this is another act of intimidation and retaliation directed by Taylor to Flowers because of Flowers' statement made on Plaintiff's behalf. (Id. at 11 ¶ 11). Defendant Moody questioned Flowers about the two alleged incidents of retaliation but Defendant Taylor was "left in his position in the education department resulting in further retaliation." Plaintiff contends he possesses a signed statement from Flowers regarding the two incidents of intimidation which is signed under penalty of perjury. (Id. ¶ 12).

Plaintiff reports that he "received the (3rd) third and final step of" his grievance on March 25, 2011. (Doc. No. 1 at 15). The grievance examiner found there was a conflict between Plaintiff's allegations– that correctional officers made comments about his status as a former police officer and convicted sex offender in the presence of fellow inmates– and the correctional officers' response that conversations regarding a former police officer and sex offender were not directed towards Plaintiff or his criminal offense. (Id.). According to the Complaint, the grievance examiner concluded that the prison staff had adequately addressed Plaintiff's concerns. (Id.).

Plaintiff continued to press his grievance by contacting Robert Lewis, Director of Prisons. However, Director Lewis referred Plaintiff back to Defendant Lawler who informed

5

Plaintiff that he should "await the results of this grievance." (Id. ¶ 13).

Meanwhile, on two occasions in mid-April, Defendant Taylor made direct eye contact with Plaintiff and on one occasion Taylor "said something in a hushed tone which [Plaintiff] was unable to hear." Plaintiff reported these incidents of direct eye contact to Defendants Lawler and Moody "to no avail." (Id. at 12 ¶ 15). Plaintiff reports that in late April 2011, Taylor stood next to him and uttered a profanity to Plaintiff, apparently intimating that Plaintiff's efforts in the grievance process had failed to work. (Id. at 13 ¶ 16). Plaintiff alleges that with the exception of his initial grievance, all of his other complaints have been largely ignored "proving beyond doubt that defendants Lawler and Moody approve of defendant Taylor's behavior and are deliberately indifferent to [Plaintiff's] personal safety." (Id. at ¶ 17).

On April 29, 2011, Plaintiff received a response to his initial grievance from Defendant Slagle. The response noted that an investigation had been completed and no evidence was found to support Plaintiff's allegations. On this finding, Defendant Slagle recommended that no further action be taken. (Id. at 14 ¶ 18). A few weeks following this report, Plaintiff alleges Defendant Taylor "was removed from his position in the education department and reassigned to operations. This move has put defendant Taylor" in more frequent contact with Plaintiff, and "in closer proximity to [Plaintiff] which proves even further the lack of concern and deliberate indifference of defendants Moody, Slagle, and Lawler. Plaintiff contends this proximity will allow Defendant Taylor to "have more opportunity to put [Plaintiff] in harms way." (Id. ¶ 19).

On June 27, 2011, Plaintiff received the final step of his grievance. The examiner summarized Plaintiff's grievance: "[Plaintiff] stated that Correctional Officer Taylor made a comment about police officers coming to prison in reference to [Plaintiff] and [Plaintiff's] sex offense in front of other inmates." The examiner found that the prison staff admitted the

6

statement was made, but they denied that the comment was directed to Plaintiff in any way. The examiner then concluded that the prison staff had adequately addressed Plaintiff's grievance and that proper action had been taken. (Id. at 15 ¶ 20).

Plaintiff alleges he informed Defendant Superintendent Susan White that he was preparing his Section 1983 Complaint in an effort to protect himself from retaliation by prison staff. Despite his request to be free from retaliation, following the filing of his Complaint, Plaintiff contends that in September 2011, while Plaintiff was returning from the dining hall, an unnamed inmate remarked to Defendant Foster that "there sure a lot of police around here." Plaintiff speculated that the unnamed inmate "was probably referring to all the correctional officers in the hall way at the time, but defendant Foster stared straight at [Plaintiff]; looking [Plaintiff] up and down, and stated 'there sure are a lot of POLICE around here.'" Plaintiff alleges Taylor placed particular emphasis on the word "police" and Plaintiff states that he has a declaration from an inmate who overhead Taylor on this occasion. (Doc. No. 6: Amended Complaint at 3).

Plaintiff contends that he reported this incident to Defendant White and she replied that there was no evidence to support Plaintiff's "allegations of inappropriate or unprofessional comments or retaliation." (Id. at 3-4). Plaintiff alleges that no one interviewed him about this incident and the "flippancy of Ms. White's response only proves further that the behavior exhibited by the defendants in this Complaint is not only approved of but seems to be encouraged by the lack of investigation and the failure to reprimand." (Id. at 4).

Plaintiff alleges that the Defendants are liable because:

Even if prison officials don't know about the risk to a particular prisoner, they can be held liable for policies or conditions that are dangerous to all prisoners or to an identifiable group of prisoners.

(Doc. No. 1 at 16 ¶ 21). Plaintiff goes on to identify certain groups that are vulnerable because of their criminal background, e.g., sex offenders, or because they are young or passive inmates. (Id.). Plaintiff observes that prison officials have a duty to protect inmates "from assaults by other inmates, including sexual assaults." (Id. at 17). All defendants are liable, according to Plaintiff, because they "displayed 'deliberate indifference' or 'reckless disregard' for saf[e]ty by failing to 'act reasonably' in response to danger." (Id.).

In his claims for relief, Plaintiff requests declaratory relief that Defendants Taylor and Foster violated his Eighth Amendment right to be free from "cruel and unusual punishment related to reasonable safety (deliberate indifference)." Plaintiff requests declaratory relief against Defendants Moody, Slagle, Lawler and White based on their "deliberate indifference" in failing to take adequate action on his filed and oral grievances. (Id.). Plaintiff seeks injunctive relief in the form of sanctions against each defendant for failure to protect his constitutional rights as provided for by the policy of the North Carolina Department of Corrections. Plaintiff also seeks punitive and nominal damages. (Id. at 6).

    B.    <u>Section 1983 Claims</u>

        1.    Eighth Amendment Claims

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." <u>Farmer v. Brennan</u>, 511 U.S. 825, 828 (1994) (internal citations omitted). In searching for a definition of "deliberate indifference," the Court observed that it lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other, the Courts of Appeals have routinely equated deliberate indifference with recklessness." <u>Id.</u> at 836 (internal citations omitted). "[D]eliberate indifference entails something

more than mere negligence . . .[but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Short v. Smoot, 436 F.3d 422, 427 (4th Cir. 2006) (quoting Farmer, 511 U.S. at 835). An Eighth Amendment claim alleging deliberate indifference against a prison official must first show that the alleged deprivation is "objectively, sufficiently serious." Farmer, 511 U.S. at 834. "Second, the prison official must have 'a sufficiently culpable state of mind.' " Short, 436 F.3d at 427 (quoting Farmer, 511 U.S. at 834). The evidence must show that the prison "official was subjectively aware of the risk." Farmer, 511 U.S. at 829.

The Eighth Amendment holds prison officials responsible for taking "reasonable measures to guarantee the safety of the inmates." Id. at 832 (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984) ). "In particular . . . . 'prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Id. at 833 (quoting Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558 (1st Cir.), cert. denied, 488 U.S. 823 (1988)). "Importantly, a prison official 'who actually [knows] of a substantial risk to inmate health or safety may be found free from liability if [he] responded reasonably to the risk, even if the harm ultimately was not averted." Short, 436 F.3d at 427 (quoting Farmer, 511 U.S. at 844). "Prison officials who act reasonably cannot be held liable under the Cruel and Unusual Punishment Clause." Id. (quoting Farmer, 511 U.S. at 844-45).

      a.     Defendants Taylor and Foster

Plaintiff contends that a few isolated comments which he believed were directed to him and made in the presence of other inmates, presents a cognizable claim of deliberate indifference under the Eighth Amendment. Notwithstanding the fact that the Defendants who reviewed and investigated his grievance concluded there was no evidence to support Plaintiff's claims, the

9

claims themselves, taken as true, do not present a constitutionally protected right. To be clear, the claim Plaintiff presents against Defendants Taylor and Foster is that they violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment by being deliberately indifferent to his right to be reasonably safe. (Doc. No. 1 at 5).

First, there is simply no indication that Plaintiff ever suffered any risk at the hands of any inmate housed at Mountain View Correctional. He alleges no threats, assaults, or other inmate action resulting from overhearing Taylor or Foster's statements. Plaintiff alleges that Defendant Taylor "made direct eye contact" with him, but the Court finds this did not rise to the level of an Eighth Amendment violation. (Id. at 11 ¶ 13, 12 ¶ 15). Although Plaintiff presents allegations that fellow inmates observed or witnessed the disclosures by Defendants Taylor and Foster, there is still no evidence to show that these disclosures did anything to impact Plaintiff's safety.

Second, the Constitution does not provide Plaintiff with a recognized right to obtain relief from the name-calling he alleges he endured from Defendant Taylor. (See, e.g., Doc. No. 1 at 7 ¶ 3 ("dirty cop" and "Bacon boy"). These are clearly matters that would properly be handled through the grievance procedures in which Plaintiff has already participated.

On these facts, the Court cannot grant Plaintiff's claim for declaratory relief. Plaintiff's claims against Taylor and Foster fails to state a claim for which relief can be granted under Section 1983, and these claims will therefore be dismissed. 28 U.S.C 1915A(b)(1).

b.  Defendants Moody, Slagle, Lawler, and White

In the present case, Plaintiff admits that he was offered segregation from the prison population after he submitted his grievance and it was reviewed initially and on further review. (Doc. No. 1 at 8 ¶ 7; 9 ¶ 8). Plaintiff declined both offers, "explaining that protective custody only protects me from other inmates not staff." (Id.). Plaintiff's Complaint thus presents a

situation where it is at war with itself. Plaintiff contends in his Amended Complaint that Defendant Taylor's persistent comments placed him in fear of violence at the hands of his fellow inmates, yet when offered apparent safety from these unknown individuals, Plaintiff refused and indicated that the staff, not the unnamed inmates, posed the foreboding threat.

Plaintiff himself acknowledges that his criminal record is a public record, easily accessible on the North Carolina Department of Corrections website by simply searching his first and last name. (Doc. No. 1 at 10 ¶ 10). Even if it is true that Taylor or others conveyed the nature of his convictions to inmates, his convictions are clearly public record and are readily accessible by anyone that wants to know why he was incarcerated. More fatal to Plaintiff's claim is the fact that he has never identified one inmate that has leveled a threat against him, or has cast a menacing eye his way, or has even challenged him during the time he alleges his Eighth Amendment rights were being violated. This risk of threat, as Plaintiff characterizes through his alleged facts, is too speculative to rise to the level of a constitutional violation and must therefore be dismissed.

Also terminal to Plaintiff's claims against these defendants is the fact that they appear to have believed that Plaintiff feared potential violence at the hands of his fellow inmates after the inmates learned that he was a former police officer and convicted sex offender. In response, Plaintiff was offered segregation which he twice refused citing not his fear of the inmates but a fear of retaliation from staff. Based on the facts as alleged in Plaintiff's Complaint, taken as true at this stage, these officials have fulfilled their duty to subjectively appreciate risk to Plaintiff's safety and they acted to allay Plaintiff's professed fears and to grant him safety from his unknown assailants. See Farmer, 511 U.S. at 844-45 ("prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause.").

To the extent Plaintiff pleads a cause of action of retaliation against these defendants for transferring Defendant Taylor to a duty station where Taylor would be in closer proximity to Plaintiff, there are no allegations which could support a statutory claim or constitutional claim of deliberate indifference. See 42 U.S.C. 1997d ("No person reporting conditions which may constitute a violation under this subchapter shall be subjected to retaliation in any manner for so reporting."). Following Defendant Taylor's transfer, Plaintiff claims this new proximity had placed Taylor in more frequent contact with Plaintiff, and will allow Defendant Taylor to "have more opportunity to put [Plaintiff] in harms way." (Id. ¶ 19). Plaintiff's Complaint simply does not allege sufficient facts which support a claim of retaliation.

According to the facts alleged in his Complaint, Plaintiff has failed to state a claim of deliberate indifference which is actionable under the Eighth Amendment and his claims will be dismissed under § 1915A(b)(2).

2. Injunctive Relief for Failure to Follow North Carolina Department of Corrections Policy

The "Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by the state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1995). Even if the Court assumes Defendants Moody, Slagle, Lawler, or White violated grievance procedures, such action or omission as Plaintiff contends, standing along, does not amount to a constitutional violation. See United States v. Caceres, 440 U.S. 741, 751-52 (1978); see also Riccio v. Cnty. of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990) (explaining that if state law grants more procedural rights than the Constitution requires, a state's failure to abide by its own law does not rise to the level of a Constitutional violation). The facts alleged in Plaintiff's Complaint demonstrate that these defendants participated in the grievance procedure and issued

12

a final ruling. Plaintiff's disagreement with their rulings cannot support a finding which is actionable in a claim under § 1983. See 42 U.S.C. § 1997(a) ("The failure of a State to adopt or adhere to an administrative grievance procedure shall not constitute the basis for a [section 1983] action under 1997a or 1997c of this title."). Plaintiff's claims against Defendants Moody, Slagle, Lawler, and White which raise the issue of failure to follow North Carolina Department of Corrections policy are dismissed for failure to state a claim.

### III. VENUE

Plaintiff has filed two motions for a change of venue to the Eastern District of North Carolina. (Doc. Nos. 13; 14). The Court finds that venue is proper in this district. Plaintiff's motions are denied.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Amended Complaint, (Doc. Nos. 1; 6), is **DISMISSED** under 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief can be granted.

2. Plaintiff's Motions to Change Venue, (Doc. Nos. 13; 14) are **DENIED**.

Signed: May 24, 2012

Robert J. Conrad, Jr.
Chief United States District Judge